My name is A.L. Brown and I represent Gerald Booker. This case is about the government exploiting an exception to the due process rules. Under the standard due process rules, if a deprivation of liberty or property is a function of a statute, no post-deprivation remedy will suffice. The government must first give notice and opportunity to be heard, no matter what the subject matter. But the Supreme Court has decided, and we have accepted, that forfeitures are different. And so you will see from the District Court we have dropped the pre-deprivation claims and focused solely on the post-deprivation claims. But I think the context is still important. In forfeiture proceedings, pre-deprivation hearings are not required. They're afraid that the person's got abscond, the property will come up missing. So they allow the government to take the property first and then, presumably, provide post-deprivation hearings. In Minnesota, it doesn't work that way. When it comes to a vehicle forfeiture, the government takes the property, the vehicle, and then they sit on their hands and they wait. Absolutely correct. I should be more careful. They give you notice, and then they sit on their hands and wait. They do nothing else. If you want a chance to get your car back to challenge it, you have to file the lawsuit. And it's not only file, you should be careful, in Minnesota it's a pocket service state. Ordinarily, you can initiate a lawsuit by simply serving it on the party. But they add the extra burden of making you file it in this case, which is quite unique, which means you incur the liability. So this is what Minnesota has chosen to do, is to exploit that advantage. They have the affirmative obligation to provide due process. They have the affirmative obligation, and I've cited cases in the brief from circuits across the country in particular. I think the Seventh Circuit's quote is quite apt, where they say, I'm sorry, I believe it's on page six of our brief, the government must establish the process and tender an opportunity for a hearing. It may not sit back and wait for an aggrieved person to file a suit. Well, Counsel, that's kind of like our previous case. I think it's Chapman. But in this case, did the arrest really occur in May, and the first time an attorney said anything about this was in January, the following January, is that correct? I believe that's correct, Your Honor. I think that's your affidavit. I believe that's correct. But let's credit that delay to the plaintiff. We'll take charge for that. It's the subsequent delay. I'm sorry. It's the lack of due process altogether. In other words, whether the plaintiff would have filed the lawsuit within the 30 days, he still would not have been afforded due process because the system is inherently flawed. The district court, I think, got to the heart of the case, and I think the core of the district court's analysis can be found on page 25 of the appellate's addendum. I'm sorry. Page 25 of the appellate's addendum, which is also page 25 of the district court's opinion, where the district court recognized that Coleman was somewhat controlling. Coleman is the case that this circuit has decided that a seven-day three principal holdings of Coleman. The vehicle is important as it relates to the Constitution. Seven-day delay is far too long. After you ask for it. After you ask for it. Right. You got to ask for it. So we don't start the clock here to January of 2012 under any circumstances, right? Perfectly fine with that analysis, Your Honor. That the seven-day delay is far too long and that there's really no government interest in postponing a hearing that it has an obligation to provide anyway. The district court recognized that Coleman was holding, but it had a problem with the fact that Booker did not ask for it. So in some ways, what the district court says is, if you want to complain about this due process, you have to go through the very process that you're complaining about. And that's wrong. Because this court has never held, and in fact this court has held it the opposite in King and in other cases, that the Constitution requires an adequate post-deprivation remedy. Recall again, it is the city who has the obligation, the government has the obligation to start with. It is not enough for them to say, you sue us, and whatever we offer you as a post-deprivation remedy is sufficient. And the city admits that much on page 17 of their brief. They say, to determine whether a constitutional violation has occurred, it is necessary to ask what process has been provided and whether it is constitutionally adequate. So certainly Minnesota has provided a judicial determination, but that doesn't answer the question that's before the court. Is this judicial determination process constitutionally adequate? And by the holdings of this court, it cannot be. Again, Coleman is binding. Seven days, and I don't think there's anything magic about seven days. I don't pretend that seven days is absolute, but I think months on end, even if we start at 2012 when he first asked for his vehicle or some type of response from the government, even if we start there. But by then it had already gone back to the creditor, right? No, it was still impounded. By the time, and I wrote the letter to the city attorney myself, the vehicle was still in custody  so that there was a discussion with the magistrate judge as to whether we're going to bring a TRO to stop them from sending it back to the creditor because the lawsuit had been filed and the vehicle was still in possession of the city at the time before they turned it over. Should Coleman be read in light of its facts? It's a ridiculous situation where this municipal judge apparently set the law unto himself and said, you'll impound these cars any time I say you want to. Well, of course, every case has its own facts, but I think it's highly analogous because what you have is a judge who's essentially writing a statute. If you would put it that way, he's writing the law unto himself. The judge, talking about the judge and Coleman, if I were to take the court's view of it, he essentially wrote a statute. He said these vehicles will be impounded. That's not much different at all than Minnesota Statute 169, the forfeiture statute that says you can take these vehicles in and do these in this fashion. Well, but the reasons they could impound in Arkansas under the judge's edict was about anything he wanted, not having a driver's license. I won't belabor the point, but it's an analogy. Well, anyway, go on. Before you get too far down the road, would you address kind of a waiver point? There is a sentence in Coleman that says if the plaintiff had actual notice of the availability of an earlier opportunity to be heard but set on his rights for several days before requesting a hearing, then plaintiff cannot complain that the city failed to provide a constitutionally prompt hearing. Does that mean you waive this by the period of time in this case? No, Your Honor. I don't think Coleman was talking in that context about a complete waiver. What Coleman was talking about in that sense was he can't complain about the time he was sitting on his hands. If he could have gotten a hearing sooner and did not, then he can't complain. And that's why we readily concede that it's not until the first time in which he actually asks for his vehicle back or makes some stink about it that the clock starts running. So you're really attacking the 30-day time limit? No. Are you sure? Because think about where you and I have got the dialogue. I think you're attacking the 30-day time period. No, Your Honor. I'm attacking the overall lack of due process to have accepted the premise at the outset. But I disagree with the fact that he has to do anything other than ask for it. And there are many barriers to starting a lawsuit to get your vehicle back after being arrested for a DWI. The cost of it, the hiring a lawyer, the function of it, it's not easy. And I've seen several clients struggle with the process. So I guess I don't accept the premise that he literally just sat on his hands. And if I do accept the premise, I only accept it to the point that it gets to an issue of at what point the government could be held liable for not responding. But it is my contention that the overall process that requires him to ask for it in a way of a lawsuit creates a higher barrier than it does. And here's the comparable example. If you look at the federal system, the forfeiture system, I could literally write down on a piece of paper, the 8th Circuit took $5 from me while I was standing before it in an oral argument. I claim under penalty of perjury that that's my money. Turn it into the 8th Circuit and you do the rest. Now that's a much different situation than what we have here in the vehicle forfeiture context under Minnesota law. To be clear in my mind, under your view of the Constitution and this statute, to be constitutional, what would the Minnesota statute have to provide? I think the Crimstock case out of New York, which is the New York case, and this is a quite similar case. In fact, it's virtually identical. The court below recognized that. And the Alvarez case out of the 7th Circuit, which was vacated, it did make its way to the Supreme Court, but then it was vacated because the city of Chicago mooted the case by simply returning the vehicles to the individuals. Again, to be more specific, under Crimstock, what would Minnesota have to do? The city of St. Paul or whoever drafted it? They would have to permit a person an opportunity to challenge. In other words, they would give within what time frame? Seven days or fewer? I think under Coleman, seven days is reasonable. Or is reasonable, but I don't know a magic number, frankly, because it's a flexible concept. And what right did your client have under the present existing situation? He had no rights except to file a lawsuit. And the process, I want to be clear, he files a lawsuit. The county, the government can answer or not answer. It's up to them. The statute doesn't require them to answer. They can wait 20 days. He has to wait 20 days to figure out if they're going to answer because the Minnesota Rules of Civil Procedure apply. So he's already 20 days in the hole. So let's suggest that he had done exactly what the county, the city and the court below suggested. He would have already been 20 days in the hole no matter what he did. And then he has to wait until after the criminal proceedings are over, which take four to some odd months. Unless the prosecutor waives it. Unless the prosecutor waives it. But you can read from the deposition that that doesn't happen. They have no incentive to happen. And in fact, what happens in practice is they use the forfeiture as pressure on the criminal case. Hurry up and plead guilty so we give you your car back. And so the idea that the prosecutor, and even if the prosecutor did grant it, where does that get them? It's not like the prosecutor can control the court calendar. So the prosecutor says, okay, I agree. 20 days later. What does the prosecutor have to do? I mean, I was looking at Crimsock. They're more concerned there about the innocent owner. Let's assume you have a system in place. You say, I want my car back. And what does the city have to do at that point? Don't they just have to show probable cause? I think they should. But I think they have to do it. And the point is they don't. I think that's a reiteration of Judge Waldman's question. What should it look like? I disagree, Judge Malloy, that Crimsock is solely concerned about innocent owners. In fact, there's a footnote in which one of the judges says, let's not pretend like this is just about innocent owners. I'm opting out of that particular aspect of the case. This is about everyone. What they should have to do is permit the party an opportunity to challenge whether the government has a right to hold the property. And do you have any problem assuming that they do have such a system in place of putting a time limit on the defendant's challenge or loser's right to challenge the forfeiture? No, I don't have a problem with the 30-day time limit. You have to let us know. What I think the fundamental constitutional problem with the case is, is that no matter what you do, if you act perfectly by the standards established by the District Court, you're not getting a hearing for over 30 days and likely months into it. And you'll be deprived of your property and would only be based on the probable cost determination of a single officer, and there's nothing you can do about it. That's the fundamental problem with the case. And I said in the brief, and I'll say again, this case is about fairness. Can the government take private property of a citizen, sit back on its hands, tell you it has it, give you the notice about it, sit back on its hands and say, sue me if you want it and wait months for a hearing before you get a chance to prove your case. Well, under the routines that are followed in City of St. Paul, when does the officer's probable cause determination, when is that tested? Preliminary hearing within five days or something? On the criminal matter? Yes, on the criminal matter. I think it's 48 hours. I'm actually not sure. I'm not absolutely positive, but I think it's 48 hours. But they don't mix the two. And I think the city misstated. So what happens at the probable cause hearing if they find that there's no probable cause, does the car come back to the owner? Are you referring to the criminal probable cause? Yes. There's no connection between the two. The statute is plain that the forfeiture and the criminal matter are distinct. And there is no evidence, and in fact, I know that the practice is that judges don't consider. You've got a criminal judge presiding over a criminal matter. He or she is not concerned with this forfeiture. He's looking at the four corners of the complaint and seeing if there's probable cause for the criminal matter. You deal with that on the civil side. That's the general proposition, and it's a well-known practice in the state of Minnesota. I don't think it's any secret. The left hand doesn't know what the right hand is doing? And intentionally so. And it is by design that way. The statute says specifically the criminal matter and the forfeiture matter are independent. I've run out of time even for rebuttal. We'll give you some for rebuttal. Do you have another question, Judge Bennett? No, I was... Very well. We'll hear from the city. Ms. Hampton Flowers, good morning. You may proceed when you're ready. Good morning, Your Honors. My name is Portia Hampton Flowers. I am here on behalf of the city of St. Paul. This matter is really about a first degree driving while impaired, and that's where we start. And what you've heard from the plaintiff's counsel is a concern that due process isn't being satisfied here. But there is a distinction between what he's asking for and what due process law requires. Due process requires notice and an opportunity to be heard before a final deprivation occurs. And the due process law doesn't require the provision of a probable cause hearing in addition to and prior to the final deprivation. Well, counsel, and I know I'm interrupting you very early, I would like to ask you a question on the Krimstok case. And there are many sentences, I could quote you some, and you can argue about the context, that the adequacy of an inquiry into probable cause cannot wait months or years before a civil forfeiture proceeding takes place. And you probably looked at the opinion. Tell me how we can rule for you and not be in conflict with the Krimstok case. Well, I would point to the fact that Krimstok should be looked at very closely. The difference between what happened in Krimstok and what's happening with the city of St. Paul, excuse me, with the state statute that's at issue in this case is there are big differences between the safeguards that are provided under the New York statute in Krimstok and the safeguards that are provided under the Minnesota vehicle forfeiture statute. One of the things that the court pointed out in Krimstok is the absence of an innocent owner defense. Minnesota statute actually has an innocent owner defense. If you are an innocent owner and your vehicle has been used in the commission of a first degree driving while impaired, if you show up and you say, I am an innocent owner, you have the ability to retrieve your vehicle. That didn't exist. Can I ask, how does it work in practice? What does the record show? Say I'm the innocent owner, you know, somebody uses my vehicle and commits one of these offenses. Do I have to pay a $380 filing fee and do I have to wait months and months and months before I get my vehicle back? What the record shows with respect to the innocent owner defense is with the city of St. Paul, if an innocent owner comes in and says, I'm an innocent owner, they don't have to go through that process. If you look at the deposition transcript from Judy Hansen, there is some reference to that and I think the reference is at pages 33 and 39 of her deposition as well as the errata sheet where she identifies the fact... Whose deposition is that again? Judy Hansen, Judith Hansen. And she identifies the fact that if you're an innocent owner, you don't go through that process. Well, that's interesting because I was hypothesizing the poster child case, as it were. The single mom who needs her car to take her children to work. She makes the mistake of letting her friend drive it. He's drunk. They pick him up. How soon would she get her car back? Well, that's another thing. That's another difference between the statute at issue in Crimstock and the statute at issue in this case. There is another safeguard. In Minnesota, if you have the opportunity to give security or post a bond. Well, take the single mother who can't post a bond. I mean, you're talking $15,000. They're not going to be able to post a bond. Yes, but there's also the security. In other statutes similar to this that are worded almost identical to this, produce or present the certificate of title. The city or the state can hold on to the certificate of title because that's basically the value of the vehicle. The concern is that we don't want the vehicle to disappear and we want to be able to move forward with the forfeiture. But at the same time, give the property owner an opportunity to use the car. So we do resolve that concern that I think came up in Crimstock and that the plaintiff has identified in his arguments is that the vehicle will sit and lay waste on an impound lot. So under Judge Woolman's hypo, if this single mom comes in and says, even if the car is fully encumbered and there's a lien on the title, if she presents the certificate of title, they hold the title and she gets the car back until the issue is resolved. That would be at the discretion of the seizing authority. So we don't have those facts in this case. I suppose an attackful answer on your part would be, well, perhaps the court should wait until that case comes before it. And absolutely. I think that's the biggest problem with the case that we're looking at right now. Without in any way demeaning him, Mr. Booker is not really the poster child for well, I shouldn't call him a poster child. He's not the most sympathetic plaintiff. Is the city's remedy more illusory than real in the real world? In a typical case of Mr. Booker, how soon could he have gotten his car back? Well, Your Honor, there are two other statutes that could have provided Mr. Booker an earlier remedy. 626.04 and 626.21. Both of those are statutes that provide for an opportunity for a property owner to come before the district court and petition for the return of their property. So those don't have informer paupers provisions in them, do they? Actually, I can double check that. I don't remember right up front. They actually might. Actually, they don't, now that I think about it. I think they don't, but your statute does. Our statute does. But with 626.04, if you put in a written request for the return of the property and you don't receive that property within 48 hours, you can petition the court and the court will give you a hearing within 30 days. Now, the problem with bringing up these is these aren't in your notice. Don't these have to be in your notice for you now to stand before us and claim these other statutes? No, Your Honor, because no, I don't believe that's true. It's a statute. It's state law, and everyone is presumed to know the law. We do identify for the individual what the forfeiture statute requires, but that doesn't preclude, and it hasn't precluded individuals from utilizing 626.04. What about one simple provision in your law that says the hearing will not be held until the conclusion of the criminal proceedings? Unless you have the consent of the prosecuting authority. Correct. But isn't that unconstitutional? I don't believe it is, Your Honor. It certainly conflicts with Crimstock. It certainly conflicts with even our Coleman case. Coleman says seven days is too long. It doesn't say you wait until the criminal procedure is over. So isn't that part of your statute unconstitutional on its face? No, Your Honor, because the due process requirement requires you to look at the process that's provided, provide safeguards. Everything that the court was concerned about in Crimstock and the other cases cited by the plaintiff are covered by our statute. The Crimstock sure acts like the hearing all has to be before the criminal proceedings. That's in there several times. Because there is no means for an innocent owner to retrieve their vehicle, and because there is no means for even a guilty owner to have the use of their vehicle during the interim. Those are the two problems that do not exist in our case that exist in Crimstock and which the court based their opinion upon. Even if the court takes a look at footnote 19 from Crimstock, it specifically references the fact that unlike the Crimstock statute, the Minnesota statute has an innocent owner defense. It lists the statute that we're here talking about today. How would Mr. Booker have had use of his vehicle? If Mr. Booker had come to the prosecuting authority and said, I'd like to post a bond, I'd like to give security, the prosecuting authority could have said, all right, I accept the posting of the bond or the giving of the security. They could have, but there's no, as I understand from Mr. Brown, that's not the way it works though. They won't do that because they want to use the forfeiture as a hammer to get a guilty plea on the DWI. And that's not in the statute. One, they don't do it and two, it's not in the statute is what they were going to say. Let me do a three before you answer. Three, in early January 2012, counsel here wrote the St. Paul City Attorney asking her to return and it wasn't returned. So put those three together, you don't begin to give notice of what's going on. With respect to your question, Your Honor, with all due respect to counsel for the plaintiff, there is no record of the city or the prosecuting authority using the criminal, excuse me, using the forfeiture as a hammer in the criminal action. And that question was specifically asked of the witnesses that were deposed in this case, both Mr. Richard Ellis and Judith Hanson. Unfortunately, I can't remember the page of Ms. Hanson's deposition, but there is no record and in fact they were, the witness testified that the two are kept separately because you have different prosecute, you have a different attorney prosecuting the criminal case than you have handling the forfeiture. So that is a misrepresentation. With respect to... That's the problem. My analogy of left hand doesn't know what the right hand is doing. Was it deliberately set up that way so that the forfeiture could not affect in any way the prosecutor's desire to go forward or something like that? Well, I can't speak to sort of the intent of the legislature when they draft the statute, but I can talk in terms of practice. And the practice is the forfeiture comes after the criminal proceeding unless you get the authority of the prosecutor to do so. And I think... Well, Counselor, there's a 180 day time period on here. The statute has a 180 day time period about when the judicial determination shall occur. You know what I'm referring to in your statute, right? I guess I'm not clear. Oh, I'm sorry. It's a 9D judicial determination forfeiture. It says a judicial determination shall be held not later than 180 days after the demand by the complainant. Okay. I'm waiting for your question, Your Honor. Okay. And my question is, given that and the fact that in January of 2012 he asked for it back, why in this case have you not given notice of all these things you tell us that are the safeguards? None of those are in the notice you give the person whose car is taken. Well, actually, those safeguards are in there. The innocent owner... Excuse me. The opportunity to ask for a judicial determination and the timeline for when that determination has to be requested. The fact that the individual can request to have the filing fee waived. The fact that if the vehicle is worth less than $7,500, they can take their case to conciliation court. And even there, they can have the filing fee waived. And if their vehicle is worth less than $500, there's no filing fee at all. So all of this is in the notice. And the notice specifically says if you fail to follow these procedures, you will lose all right to the vehicle. So when we jump ahead six months or seven months to January of 2012, Mr. Booker has already ignored and bypassed the options that were available to him. And so for us to now say we're going to go back and pretend as though he followed the statute and give to him what he was entitled to the statute had he acted seven months earlier, it's picking and choosing when we rely upon the statute. So you really are giving us a waiver argument at basis. Absolutely, Your Honor. Mr. Booker had opportunities available to him that he didn't exercise. And because he didn't exercise them, for him to stand in front of this court and say that it takes five to six months to get a hearing. I would not have been allowed to have my forfeiture hearing precede my criminal process is speculation. We don't have those facts because Mr. Booker never took advantage of the opportunities that were provided to him under the statute. Pardon my ignorance, but does the district court address waiver straight up? No, Your Honor. I didn't think so. Was it presented? Was a waiver argument presented to the district court? No, I think. For standing or some similar sort of avoidance issue? The words waiver weren't presented, but the argument that you had your chance and you sat on your hands, that was addressed to the court. And that was the court's finding, actually, that Mr. Booker sat on his hands and did nothing. He is very much like the plaintiff in the Coleman case. He was put on notice that this process could take a long time. And he was told not only in the notice that he was given on the date of the seizure, he was told when he contacted the court a couple of times by telephone or in person that this is the process you have to follow. And yet he still did nothing. I'd ask... Does prejudice play into this at all in the sense that is there any burden on Mr. Booker to show that had he gone through the process or had a process been in place that he would likely have succeeded? I think in order for him to prevail in this case, he has to have taken a step. Let's assume, what I'm trying to get at is does he have to prove that either the underlying statute is unconstitutional, which allows for seizure in the first place, putting aside the process, or that he wasn't guilty and wasn't subject to seizure? I think he would fail at a facial challenge to the statute because the statute itself has the safeguards that due process requires. And in terms of an as applied... I'm talking about does he have to show substantively that he could have prevailed? No. When was this statute amended? It was amended to say that the hearing shall not be held until the conclusion of the criminal proceedings. When was that done? When did that amendment occur? I don't have that record in front of me. What should we make of the amendment? Does that make the statute even more draconian than it was to begin with? In other words, it delays the process, does it not? No, I don't... Again, we're still talking about the opportunity is there. He can get the consent of the prosecuting authority. Well, that goes back to the question I asked earlier about is that not more... Do we have a record of how often that happens? No, Your Honor. So is the remedy really, or the relief, more illusory than real? No, Your Honor. I think what we have is the wrong case. I see. Very good. Do we have further questions? We thank you for your argument. I see that my time is up. Thank you very much, and I'd ask that the Court affirm the District Court's decision. Mr. Brown, we'll give you a couple... Did he use all of his time or not? We'll give you a couple of minutes on rebuttal, because obviously, well, it's an important case to your client. I appreciate the time, Your Honor. To the question, the horrors of horrors cases, what happens to the innocent owner? 17 months. And this Court has seen this case. It was the Ashanti case, in which it took 17 months for an innocent owner. It's not as though the innocent owner can prance into the prosecutor's office and say, give me my car back. That doesn't happen. They go in line like the rest of the folks. And I did not mean to at all disparage the City of St. Paul by suggesting that they're the ones who use the forfeiture as a hammer. It's just that I've been doing this case for a while, and I know that it happens. And I've seen prosecutors use the forfeiture as a hammer. I don't know that it actually happens in the City of St. Paul. To counsel's point about the right... That also gets to the point about counsel suggesting that, yes, you can come in and ask, and this happens in the City of St. Paul. Well, both can't be true, because if the civil forfeiture attorney doesn't know what's going on with the criminal attorney, then clearly there's no coordination. And when you look at Judy Hansen's testimony, which is a 30B6 deposition, read carefully pages 33-35. I asked her, where do you get the authority to simply return the vehicle to the innocent owner? I just have it. Where is it in the statute? I just have it. And so if you're talking about the whims of a prosecutor or a city attorney as due process, surely that won't satisfy it. I also want to talk briefly about the other remedies that counsel suggested are readily available. The bond. And Judge Benton asked a question that made me want to look at the 2009 statute. It has been amended. That 180-day period, I don't believe, appears in the 2009 statute. I just looked at it briefly. Thank you. Because I'm looking at 2012. Proceed. The bond. Yeah, we'll give you your vehicle back if you pay the bond. But after you pay the bond, we're going to put a disabling device on it. So you get the vehicle back, but we're going to put a boot on it so it can't move. The statute says it can only be returned with a boot. Certificate of title. Is that what they mean? In other words, it's not operable for it? It's not operable. So here's your vehicle back. Thanks for your money. Park your car somewhere else. Okay? Certificate of title, no support for that in the record. There's nothing in the statute that suggests that you can give up with a certificate of title. We've talked about the prosecuting authority. The two other statutes that the district court, and I see my time has run out. Let me complete your thought. The two statutes that the district court relied on, 62406, clearly says if you read 169, it says notwithstanding any law to the contrary. This has shoved out every other remedy and said this is the way you want to go. And even if you ignore 169863 subdivision 8E, which says notwithstanding any law to the contrary, you still have to deal with 6206, which says if it's subject to forfeiture, you can't return it. I appreciate the court's indulgence, and I ask that the district court be reversed. Thank you. We thank both sides for their vigorous advocacy, for their clients. The case is submitted. We'll take it under consideration. The court will be in recess until